IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**TONY O. GALLOWAY, JR.,**

      **Plaintiff,**

vs.                                                          **No.  03cv0087 DJS**

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OPINION

      This matter is before the Court on Plaintiff's (Galloway's) Motion to Reverse and Remand for a Rehearing **[Doc. No. 11]**, filed June 23, 2003, and fully briefed on August 29, 2003.  The Commissioner of Social Security issued a final decision denying Galloway's application for disability insurance benefits and supplemental security income.  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to remand is not well taken and will be DENIED.

### I.  Factual and Procedural Background

      Galloway, now fifty years old, filed his application for disability insurance benefits and for supplemental security income on April 13, 1999, alleging disability since March 5, 1999, due to severe scoliosis in the thoracic spine with rib subluxation at T4-5, overlying myositis and muscle spasm.  Tr. 19.  Galloway has a high school education, vocational training, and completed two years of college.  He also has past relevant work as a janitor, construction laborer, and groundskeeper.  *Id*.  On May 23, 2000, the Commissioner's Administrative Law Judge (ALJ)

denied benefits, finding Galloway had a severe "combination of physical and mental impairments relative to myofascial type upper back pain, with mild degenerative changes, a depression disorder, anxiety disorder and alcohol abuse" but these impairments did not meet or medically equal one of the impairments listed in the Listing of Impairments, Subpart P, Appendix 1, Regulations No. 4.  *Id.*  The ALJ further found Galloway retained the residual functional capacity (RFC) to perform "simple, unskilled, light exertional level work."   Tr. 26.  As to his credibility, the ALJ found Galloway's "testimony [did] not credibly establish symptoms or functional limitations to the extent alleged."  Tr. 24.  Galloway filed a Request for Review of the decision by the Appeals Council and submitted additional evidence.  On December 12, 2002, the Appeals Council considered the additional evidence and decided it did not provide a basis for changing the ALJ's decision and denied review.  Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes.  Galloway seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Moreover, "all of the ALJ's required findings must be supported by substantial evidence,"

*Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment

meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

In support of his motion to reverse, Galloway makes the following arguments: (1) the ALJ's RFC determination is contrary to law; and (2) the ALJ's assessment of his mental impairment is contrary to law.

**A.  Summary of the Medical Evidence**

On March 20, 1998, Lorna Graben, a nurse practitioner, evaluated Galloway for complaints of left elbow pain, chronic left knee pain, and low back pain. Tr. 65.  Ms. Graben found some tenderness of the lateral condyle of the elbow but no swelling and good range of motion.  His knee also was not swollen.  Examination of his back indicated a "tenderness on the left paraspinous muscles in the mid lumbar area." *Id.*  Ms. Graben noted the pain was non-radiating, the back range of motion was within normal limits, and there was no spinal tenderness. *Id.*  Ms. Graben referred Galloway to the spine clinic and prescribed Ibuprofen and heat to the elbow area.

On December 5, 1998, a health care provider at Lovelace Health Systems evaluated Galloway for complaints of intermittent achiness and discomfort of his right upper arm. Tr. 64. Galloway reported he had not had the pain for three weeks.  The health care provider recommended he rest the area as much as possible and prescribed Ibuprofen as needed.

On December 17, 1998, Galloway was involved in a motor vehicle accident and went to Lovelace Health Systems' After Hour Care. Tr. 68. Galloway was complaining of neck pain and abdominal pain from the seat belt. The attending physician noted tenderness over the cervical spine, specifically the C2-3 area. The physician ordered x-rays of the cervical spine and prescribed a soft neck collar, Motrin, and Norflex, a muscle relaxant.

On December 23, 1998, Galloway returned to Lovelace Health Systems for a follow-up of the December 17, 1998 motor vehicle accident. Tr. 62. The x-rays taken on December 17, 1998, indicated no fractures or dislocations and no acute abnormalities. Tr. 67. Dr. Dennis Walker evaluated Galloway and noted an essentially normal physical examination except for mild discomfort in the right trapezius area. *Id.* Dr. Walker opined Galloway's neck and lumbar strain was resolving and recommended he continue taking Ibuprofen as needed for pain and stay off work until January 4, 1999. *Id.*

On March 9, 1999, Galloway went for a consultation with Kimberly Levitt, D.O. Dr. Levitt noted Galloway had been having "chronically subluxed[1] rib on the right." Tr. 81. Dr. Levitt, an osteopath, noted Galloway had not had chiropractic or osteopathic manipulation. The physical examination indicated: "Rib dysfunction at T4-5 anteriorly w/corresponding lesion posteriorly at the CVA (costovertebral angle). Overlying myositis (inflammation of the muscle) and MSP was incidentally noted. Scoliosis in the thoracic spine most likely the cause of this chronically subluxed rib in combination [with] his work activity." *Id.* Dr. Levitt diagnosed Galloway with chest wall pain secondary to rib dysfunction.

---

[1] Subluxation is an incomplete luxation or dislocation. *Stedman's Medical Dictionary* 1693 (26th ed. 1995).

On March 16, 1999, Dr. McGrath evaluated Galloway for persistent neck pain as a result of the motor vehicle accident. Tr. 61. The physical examination indicated some right-sided trapezius muscle tenderness, slightly diminished range of motion, and no c-spine (cervical spine) tenderness. *Id.* Additionally, Dr. McGrath noted Galloway' radial ulna and median nerves were intact, he had good grip bilaterally, and the x-rays of the c-spine showed good joint space and some degenerative disc disease. *Id.* Dr. McGrath diagnosed Galloway with neck strain, torticollis,[2] and muscle spasm. Dr. McGrath prescribed Naprosyn (a nonsteroidal anti-inflammatory drug with analgesic and antipyretic properties), Flexeril (a muscle relaxant) and physical therapy. *Id.*

On March 22, 1999, Galloway went to High Desert Medical Associates because he continued to have pain in his neck and upper back. Tr. 75. Dr. Goldman performed a physical examination and noted pain of the upper back muscles. Dr. Goldman referred Galloway to UNM Employee Health.

On March 23, 1999, Galloway returned for his follow-up with Dr. Kimberly Levitt. Dr. Jo Ann Levitt, M.D., an anesthesiologist and pain management specialist and Dr. Kimberly Levitt's mother-in-law, examined him instead. Tr. 81. Dr. Jo Ann Levitt assessed Galloway as having scoliosis with rib subluxation and recommended follow-up with Carrrie Tingley Pain Clinic and Dr. Daitz. On this day, Dr. Jo Ann Levitt wrote a letter to Galloway's supervisor informing him that Galloway had moderate to moderately severe scoliosis in the thoracic spine with rib subluxation at T4-5 anteriorly and posteriorly. Tr. 82. Additionally, Dr. Jo Ann Levitt indicated

---

[2] Torticollis is a contraction, often spasmodic, of the muscles of the neck, chiefly those supplied by the spinal accessory nerve; the head is drawn to one side and usually rotated so that the chin points to the other side. *Stedman's Medical Dictionary* 1825 (26th ed. 1995).

Galloway had overlying myositis and muscle spasms.  Dr. Jo Ann Levitt also recommended at least three to four weeks off work.

On March 24, 1999, Galloway requested a consultation for his neck pain from Sandia IPA.  His request was approved and an appointment scheduled with Dr. Daitz.  Tr. 78.

On April 20, 1999, Galloway returned to see Dr. Kimberly Levitt, D.O.  Tr. 80.  Dr. Kimberly Levitt noted Galloway had not kept his appointment with Dr. Daitz.  Dr. Levitt diagnosed Galloway with rib dysfunctions secondary to scoliosis, chronic costochondritis[3] and intercostal myositis.  *Id.*

On July 19, 1999, Galloway had an x-ray of the thoracic and lumbar spine.  Tr. 90. 101.  The x-rays indicated the lumbar and thoracic spine demonstrated no compression fractures or subluxation.  The results were "negative thoracic and lumbar spine."  *Id.*

On July 21, 1999, Galloway returned to see Dr. Jo Ann Levitt with complaints of back pain.  Dr. Levitt opined the back pain was secondary to scoliosis and rib dysfunction.  On exam, Dr. Levitt found less swelling and myositis.  Dr. Levitt diagnosed Galloway with chronic back pain secondary to congenital scoliosis and muscle spasms with myositis.  *Id.*  Dr. Levitt instructed Galloway to complete a pain questionnaire.

On July 27, 1999, Dr. Barrie Ross, a Physical Medicine and Rehabilitation specialist, evaluated Galloway.  Tr. 93-96.  Dr. Samuel Goldman referred Galloway to Dr. Ross.  Galloway informed Dr. Ross that he had a history of chronic upper and thoracic back pain related to scoliosis.  Dr. Ross found it interesting that Galloway's wife was on disability through the

---

[3] Costochondritis is inflammation of one or more costal cartilages, characterized by local tenderness and pain of the anterior chest wall that may radiate, but without the local swelling. *Stedman's Medical Dictionary* 403 (26th ed. 1995).

government for five years for fibromyalgia. Tr. 93. Dr. Ross performed an extensive physical examination. The musculoskeletal examination revealed full range of motion without pain of the thoracic and lumbar area. Straight leg raising was negative. There was no evidence of scoliosis, kyphosis, or asymmetry. There was no tenderness to palpation over the lumbar paraspinal muscles, however, there was tenderness of the thoracic paraspinals, mid-level. Tr. 95. The cervical spine examination revealed full range of motion without pain, no kyphosis or asymmetry, and no edema or erythema. *Id.* There was pain with neck extension and tenderness in the cervical paraspinal muscles. Dr. Ross' impression was as follows:

> Mr. Galloway appears to have myofascial[4] type upper back pain. I am unable to note any structural abnormality. I do not appreciate any evidence of asymmetry or scoliosis on clinical exam. He does complain of right upper extremity numbness; however this is in a non-dermatomal distribution. It should also be noted that when I discussed DVR referral and EMG testing along with the physical therapy program, the patient changed the conversation to discuss his inability to work with me. He asked me for my opinion with respect [to] whether or not I thought he could work. I told him that I thought that he could work, but to (sic) respect to a specific capacity level, I could not answer that until I completed a further work up. At this point, Mr. Galloway stated that he had been losing weight and was very concerned about this issue.

*Id.* Dr. Ross ordered lab studies, prescribed physical therapy two to three times a week for three to four weeks for myofascial pain management and referred him to DVR. Tr. 95-96.

On August 19, 1999, Galloway returned to see Dr. Jo Ann Levitt. Tr. 104. Galloway returned a pain questionnaire (Tr. 105-110) and reported prednisone had helped. Dr. Levitt noted Galloway had less muscle spasms and swelling in the spine and "still w/ (with) scoliosis." *Id.* Dr. Levitt also noted Galloway had long-standing depression and had been on Zoloft 200 mg every day but not consistently. Dr. Levitt discontinued the Zoloft and prescribed Wellbutrin SR. *Id.*

---

[4] Myofascial– Of or relating to the fascia surrounding and separating muscle tissue. *Stedman's Medical Dictionary* 1168 (26th ed. 1995).

On August 24, 1999, Dr.Ross diagnosed Galloway with upper back and neck pain. Tr. 92. Dr. Ross noted Galloway had not gone to physical therapy as he had recommended. Dr. Ross also noted the following:

> The patient and his wife continuously asks me during today's evaluation if I felt that Mr. Galloway was disabled such that he could obtain SSI benefits. I told them that I had no indication based on his clinical examination or history that there was any particular diagnosis that would cause him to be considered 'disabled.' EMG and nerve conduction studies were performed in my office today, please refer to procedural note for full details. Essentially, the study was within normal limits.

*Id.* Dr. Ross recommended Galloway proceed with physical therapy. Dr. Ross instructed Galloway to return as needed.

On September 20, 1999, Galloway returned to see Dr. Jo Ann Levitt with complaints of pain secondary to scoliosis. Tr. 104. Dr. Levitt noted Galloway was despondent because the Social Security Administration had found he was not disabled. Dr. Levitt opined Galloway's prognosis for work was poor secondary to severity of MSK and psychiatric disease. *Id.*

On October 25, 1999, William D. Levitt, D.O., submitted a letter to the Social Security Administration opining "this patient (Galloway) cannot be gainfully employed or retrained due to his physical limitations, congenital scoliosis and education and that he does meet Social Security's guidelines for disability." Tr. 103. Relying on the American Medical Asociation's Guidelines for Permanent Impairment, Fifth Edition, Dr. Levitt opined Galloway fit into both Cervicothoracic DRE Category 2 and Lumbosacral Category 2, giving him a total of 20 % whole body impairment. *Id.*

On February 6, 2000, Dr. Toner, an agency consultant, evaluated Galloway. Tr. 113-118. Dr. Toner did an extensive physical and noted Galloway's medical records were not available for his review. Tr.114. Dr. Toner's orthopedic examination was unremarkable. Dr. Toner's

9

assessment was (1) Complaints of total spine pain, with no evidence of any objective findings; and (2) Symptom magnification. Dr. Toner opined that Galloway's complaints were far in excess of any objective findings and did not restrict his lifting, walking, sitting or handling of materials based upon his examination. Tr. 115. Dr. Toner did note that he did not have any medical records to indicate to him that Galloway had any abnormalities of the spine.

On February 16, 2000, Dr. Rene Gonzales, an agency consultant, performed a psychiatric evaluation. Galloway's Mental Status examination indicated "he was mildly depressed and anxious." Tr. 121. Specifically, Dr. Gonzales found as follows:

> MENTAL STATUS EXAMINATION: Tony O. Galloway is a 46-year-old male that was cooperative, related well to me. He was able to answer questions appropriately. His eye contact appeared to be within normal limits. Psychomotor activity appeared to be mildly decreased. Dressing and grooming appeared to be appropriate. He appeared to be as old as his stated age. Speech and language intensity appeared to be soft and pitch and rate appeared to be normal. He was coherent. He did not appear to have any aphasia, neologism, echolalia, or stammering. Vocabulary and diction appeared to be appropriate to socioeducational background. Mood appeared to be mildly depressed and anxious. Affect appeared to be appropriate to his mood. Thinking form and progression appeared to be normal. Content was showing depressive trends. Concentration and attention appeared to be mildly impaired. He was not suicidal or homicidal. IQ appeared to be average. He did not appear to have any auditory, visual, gustatory or tactile hallucinations. He appeared to be alert and oriented to person, place, time and situation. The claimant's memory, immediate, recent and remote as well as registration appeared to be intact. He was able to repeat a statement. He was able to recall some things within a few minutes, a few days and long-term history. He has insight about his problems. Judgment seems to be normal. He did not appear to have any depersonalization or derealization or any major somatic complaints except for decreased energy, decreased appetite, some weight gain and difficulty sleeping.

Tr. 120. Dr. Gonzalez diagnosed Galloway with Depressive Disorder, NOS (not otherwise specified); Anxiety Disorder, NOS, and alcohol abuse. Tr. 121. Dr. Gonzalez diagnosed Galloway with alcohol abuse because Galloway reported drinking two to three times a month at least a six-pack or two to eight shots of tequila at a time. Tr 120. Dr. Gonzalez recommended Galloway see a psychiatrist for medication management.

On September 28, 2000, Galloway had an MRI of the lumbar spine done at Presbyterian Magnetic Resonance Imaging Center. Tr. 134. The MRI indicated a tiny central disc herniation present at L5-S1 that "just slightly effaces the epidural venous plexus but does not contact or otherwise affect the thecal sac or nerve roots." *Id.* Otherwise, the MRI was normal except for exaggerated lumbar lordosis.

On November 1, 2000, Dr.Richard Radecki, a Physical Medicine and Rehabilitation specialist with New Mexico Spine, evaluated Galloway at Dr. Goldman's request. Tr. 207-209. Galloway reported severe spasms throughout his back region. He also reported going numb on the right side, primarily during the day followed by neck swelling and later a headache. Tr. 207. Galloway reported that nothing relieved the pain. The physical examination was essentially normal except for "tight muscles through the paraspinal area and lumbar area with wincing of discomfort." Tr. 209. Dr. Radecki noted "Waddell signs (standardized assessment of behavioral (nonorganic) responses to physical examination) were 5/5 for overreaction, regionality, distraction and twisting with stability of the spine causing pain in a nonphysiologic manner." *Id.* Dr. Radecki opined "there [were] some signs of symptom magnification for his perceived pain." *Id.* Dr. Radecki also found that Galloway's pain did not follow neurologic distribution. Dr. Radecki recommended a new medication for the muscle spasms. Dr. Racecki found the MRI showed an exaggeration of lumbar lordosis but the discs were all healthy except for L5-S1 which showed some degeneration. However, Dr. Radecki opined that this was not significant enough to cause the pain distribution he reported.

On February 26, 2001, Galloway returned to see Dr. Goldman with complaints of stiff body in the morning.  Tr. 212.  Dr. Goldman discussed the need for him to return to Dr. Radecki for a follow-up "in hopes of [decreasing] his reliance on narcotics."  *Id.*

On March 8, 2001, Galloway returned to Dr. Radecki for a follow-up visit.  Tr. 205-206.  Dr. Radecki opined that because of Galloway's history of medication as well as pain, he believed it would be difficult for Galloway to decrease his pain significantly.  Tr. 205.  Additionally, Dr. Radecki found Galloway's "pain diagram inconsistent in many ways to a neurologic cause of pain."  *Id.*  Dr. Radecki graded the October 31, 2000 pain diagram a 4 for symptom magnification.  *Id.*  Dr. Radecki's recommended continuation of his medication and advised Dr. Goldman to "try to strengthen [Galloway's] concept of returning to work in a less manual type job, since it seems to irritate his pain, but in something that at least keeps him active, which would definitely be beneficial for him from a pain point of view."  Tr. 206.

## B.  RFC Determination

The ALJ found Galloway retained the RFC for simple, unskilled light exertional level work.  RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirement of jobs."  20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(c).  The RFC is determined once, in detail, at step four of the sequential evaluation process.  *See* 20 C.F.R. § 404.920(e); SSR 96-9p, 1996 WL 374185, at *2, *5-*9; SSR 96-8p, 1996 WL 374184, at *5-*7; SSR 86-8, 1986 WL 68636, at *4.  In assessing RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe.  SSR 96-8p at *4.  Additionally, in arriving at an RFC, agency rulings require that an ALJ must provide a "narrative discussion describing how the evidence

12

supports" his or her conclusion.  *Id.* at 7.  The ALJ must "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record."  *Id.*  The ALJ must also explain how any material inconsistencies or ambiguities in the case record were considered and resolved."  *Id.* "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence."  *Id.*  The RFC assessment "must not be expressed initially in terms of the exertional categories of "sedentary [or] light; "rather, a function-by-function evaluation is necessary in order to arrive at an accurate RFC.  Id. at *3 ("[A] failure to first make a function-by-function assessment of the [claimant's] limitations of restrictions could result in the adjudicator overlooking some of [the claimant's] limitations or restrictions.").

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [he] must have the ability to do substantially all of these activities.  20 C.F.R. § 404.1567(b).   Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  20 C.F.R. § 404.1568.

Galloway contends the ALJ's RFC finding is contrary to law for the following reasons: (1) the ALJ should not have referred  him to Dr. Toner for a consultative evaluation but rather should

have consulted with his treating physicians; (2) the ALJ failed to provide Dr. Toner with his medical records; and (3) the ALJ failed to consider that his depression and anxiety may aggravate his perception of pain.

Galloway contends the ALJ should not have sent him to Dr. Toner post-hearing because he was being treated by his own physicians at the time of the hearing.  Pl.'s Mem. in Supp. of Mot. to Reverse and Remand at 8.  According to Galloway, the ALJ ignored the statutory requirement that he must "obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to make such determination, prior to evaluating medical evidence obtained from any other source on a consultative basis." *Id.*  Galloway's argument is without merit.  The ALJ requested and received all of Galloway's medical evidence and after reviewing the medical evidence found a discrepancy between Galloway's treating physicians' findings and the specialists' findings.  It was then that the ALJ ordered a consultative examination from an orthopedic specialist to clarify the issue.  This was proper.

Galloway also complains that the ALJ failed to provide Dr. Toner with his medical records.  However, minimal error by the ALJ does not require reversal or remand.  *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).  The Court has reviewed the entire record and, although it would have been beneficial for Dr. Toner to have Galloway's medical records to review, it would not have changed the outcome.  Dr. Toner relied on his own extensive physical examination to arrive at his conclusion which did not differ significantly from Galloway's treating orthopedists' conclusions.

Galloway next cites to Social Security Ruling 96-8p and argues "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Pl.'s Mem. in Supp. of Mot. to Reverse and Remand at 9.  However, Galloway does not indicate which medical source he is referring to.  If Galloway is referring to Dr. William Levitt's opinion that he is disabled due to congenital scoliosis, the record indicates that the ALJ did explain why he had not adopted that opinion.  Specifically, the ALJ fournd Dr. Levitt had only examined Galloway once and his conclusion that Galloway was disabled was based on his finding of 20 percent impairment pursuant to the AMA *Guide to the Evaluation of Permanent Impairment*.  Tr. 20.  The ALJ found:

> Third, I note claimant's treating source was of the opinion he was unable to perform work activity until April 19, 1999.  A second examiner who had examined the claimant on one occasion and reviewed the records of his partners, was of the opinion the claimant could not work on a permanent basis.  Nonetheless, I have rejected this opinion because there is no longitudinal treatment relationship with this examiner, the basis for the opinion rests on claimant's subjective complaints of pain and finally, because no other examiner has documented the presence of scoliosis in any of the diagnostic studies of the claimant.  Indeed, two x-ray studies are devoid of any reference to the presence of scoliosis.  I am unable to give any weight to an opinion that is not based upon reliable diagnostic findings.  Regulations provide I have good cause to reject a medical opinion if it is brief, conclusory, and unsupported by the appropriate medical evidence.  See 20 C.F.R. §§ 404.1527(d); 416.927(d)(1999).  Moreover, regulation further provides any conclusion that a claimant is 'disabled' is a determination reserved exclusively to the Commissioner, and delegated tot he Administrative Law Judge.  See 20 C.F.R. § 404.1527(e)(1); 416.927(e)(1)(1999).  Therefore, a statement by a medical source that an individual is 'disabled' or 'unable to work' is not conclusive of the question of whether the evidence of record supports a conclusion the individual meets the statutory definition of disability (*id.*).  See Goatcher v. United States Department of Health & Human Services, 52 F.3d 288, 289-290 (10th Cir. 1995).

Tr. 26.  These were proper reasons not to adopt Dr. William Levitt's opinion that Galloway was disabled.  Moreover, the evidence supports the ALJ's reasons for not adopting Dr. William Levitt's opinion of disability.  Dr. Ross found no evidence of scoliosis, only mild degenerative changes of the cervical spine.  Dr. Radecki also found Galloway's MRI indicated healthy discs

except for L5-S1 degeneration and found this not significant. Tr. 209.  In fact, the record indicates that none of Galloway's physicians, except for Drs. JoAnn and Kimberly Levitt, found Galloway had scoliosis.  Significantly, the x-rays of the spine and the MRI did not indicate Galloway had this condition.

Galloway also asserts the ALJ failed to make specific RFC findings and failed to consider his depression and anxiety.  The Court disagrees.  The ALJ reviewed the medical records from Galloway's treating physicians and the agency consultants, considered Galloway's subjective complaints and Mrs. Galloway's testimony, consulted with a vocational expert (VE) and determined he retained the RFC for simple, unskilled, light exertional level work.  The ALJ also considered Galloway's depression and anxiety (Tr. 21-23, 25) cited to Dr. Gonzalez' evaluation (Tr. 21-22) and followed the dictates of *Cruse v. United States Dep't of Health & Human Servs.*, 49 F.3d 614, 617-18 (10th Cir. 1995).

### C.  Mental Impairment Assessment

Galloway contends the ALJ erred when the only limitation he found was that Galloway's mental impairment limited him to simple, unskilled work.  Galloway argues the ALJ should not have assumed that a person with a mental impairment is capable of unskilled work.  Additionally, Galloway contends the ALJ's simplification of his mental impairment into a skilled/unskilled dichotomy is not supported by the record or by the law.  The ALJ adopted Dr. Gonzalez' findings, stating:

> First, with regard to mental limitations, taking into consideration Dr. Gonzalez' findings, he was of the opinion the claimant possessed the mental capacity to understand and carry out simple instructions and use judgment for this type of work.  Thus, claimant's (sic) possesses the capacity to perform the basic requirement of simple, unskilled work activity.

Tr. 25.  Dr. Gonzalez evaluated Galloway and concluded he was "able to relate to others" and was able to "remember and understand basic instructions."  Tr. 121. Dr. Gonzalez' evaluation of Galloway's mental status indicates that his "mood appeared to be **mildly** depressed and anxious" and his "[c]oncentration and attention appeared to be **mildly** impaired." Tr. 120 (emphasis added).  Dr. Gonzalez also found him to be coherent and of average intelligence.  In addition, Dr. Gonzalez found Galloway's judgment was normal.  The Court finds Dr. Gonzalez' evaluation of Galloway's mental status supports the ALJ's RFC determination.   Accordingly, the Court finds the ALJ's RFC determination and his finding that Galloway is not disabled is supported by substantial evidence.

     A judgment in accordance with this Memorandum Opinion will be entered.

**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**